[Crim. No. 9207. Second Dist., Div. Four. Mar. 12, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. MARTIN SANCHEZ, JR., Defendant and Appellant.

Sandford R. Willford, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Paul N. Wenger, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, Acting P. J.—Defendant was charged with two counts of burglary in violation of Penal Code 459. The trial court appointed counsel to represent defendant and defendant pleaded not guilty. Thereafter, court-appointed counsel was relieved, upon defendant's motion, and defendant was substituted in propria persona. The court, however, requested that counsel remain available to defendant during the trial if defendant desired to seek counsel's advice. A jury found defendant guilty as charged. Motions for new trial and probation were denied and he was sentenced to state prison for the term prescribed by law on each count, the terms to run concurrently. Defendant appeals from the judgment of conviction.

The evidence, summarized, is as follows: During the early morning hours of December 26, 1962, Jonesy's Cocktail Lounge and Ferdy's Bar were burglarized. Approximately 220 bottles of liquor, including a case of Silver Wedding vodka, invoice No. 6844 and serial No. 114247, were taken from "Jonesy's." Approximately $600 was taken from "Ferdy's," a considerable portion of which was in change. One of the silver dollars stolen had a red and yellow decal inscription "A Souvenir of Calico Ghost Town." Defendant was observed as a customer in both establishments on the night of December 25. He was observed in the company of Virgil Lamproe at Ferdy's. On the evening of December 26, Lamproe was arrested while riding with defendant. Lamproe was questioned, confessed and implicated defendant who was arrested shortly thereafter as he drove his automobile into the yard of his home. A chip of glass was found on the rear floorboard of the car. The

liquor taken from Jonesy's, including the case of vodka bearing the serial No. 114247, was found in a vacant house across the street from defendant's house. The back yard of defendant's residence was searched, with the permission of his parents, and the police discovered two buried socks containing $52.08 in coins, including the silver dollar with the decal inscribed "A Souvenir of Calico Ghost Town," and $4.00 in small bills. In an alley behind the house in which the stolen liquor was discovered, the police found two broken whiskey bottles.[1]

Virgil Lamproe testified for the prosecution. He and defendant had burglarized Jonesy's Cocktail Lounge and Ferdy's Bar. The liquor they had taken from Jonesy's was loaded into the back seat and trunk of defendant's automobile and taken to a vacant house near defendant's residence. It was unloaded in an alley behind the house. During the process of unloading, a couple of the bottles were broken. Defendant and Lamproe then went to defendant's house, where they "split" the money taken from Ferdy's, defendant placing his share in a sock, and retired. The next morning defendant told Lamproe that he was going to bury a portion of the stolen money. Defendant then left the house and walked into the back yard.

Miss Carmel Torres testified that on December 26, 1962, defendant came into her dry cleaning establishment, exchanged ten 50-cent pieces for a $5.00 bill, and paid for clothing alterations in advance, in change.

Though defendant offered no formal defense, in his argument to the jury, he denied participation in either of the burglaries and claimed an alibi.

■ Defendant contends an illegal search and seizure took place. However, he makes no showing to support such assertion. The legality of the officer's actions must therefore be presumed. (*People* v. *McNeal*, 212 Cal.App.2d 731, 735 [28 Cal.Rptr. 173].) ■ Moreover, the record clearly supports the presumption of the propriety of the officer's action. The evidence shows that the officers had permission to search the premises where the two socks, containing a portion of the stolen money, were found buried. The glass chip was found during the search of defendant's car which was made as an incident to his arrest. ■ Finally, defendant's failure to object to the admission of this evidence at the trial precludes

---

[1]One of these bottles was admitted in evidence along with the piece of glass found in defendant's car. These exhibits were presented to the jury for the purposes of matching them.

an objection now. (*People* v. *Dessauer,* 38 Cal.2d 547, 552 [241 P.2d 238].)

■ Defendant contends that the trial court erred in appointing counsel to assist defendant in an advisory capacity after defendant had insisted on representing himself. It is argued, in effect, that the attorney's presence removed the "sympathy factor" which otherwise would have been present. But the law is clear that a jury's decision is to be made on the basis of the evidence presented and, that it is not to be affected either by prejudice against or sympathy for the defendant. (*People* v. *Montoya,* 17 Cal.App.2d 547, 550 [62 P.2d 383].) The jury here was so instructed. Appointment of advisory counsel has been approved by our Supreme Court in *People* v. *Mattson,* 51 Cal.2d 777, 797 [336 P.2d 937].)

Defendant maintains that the testimony of his alleged accomplice, Lamproe, was not sufficiently corroborated. ■ The test regarding the corroboration required by Penal Code section 1111, as stated in *People* v. *MacEwing,* 45 Cal.2d 218, 224 [288 P.2d 257], is as follows: "The corroborating evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness who must be corroborated is telling the truth. [Citations.]" ■■ The law is clear that the corroborating evidence need be but slight (*People* v. *Wayne,* 41 Cal.2d 814, 822 [264 P.2d 547]); that circumstantial evidence will suffice (*People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785]); and that only a portion—not all—of the accomplice's testimony need be corroborated (*People* v. *Traub,* 175 Cal.App.2d 709, 712 [346 P.2d 805]).

■ In the instant case there was ample corroborative evidence. Lamproe's testimony that the liquor bottles stolen in the burglary of Jonesy's were transported in the trunk and back seat of defendant's car, unloaded in an alley behind the vacant house where the liquor was stored, and his testimony that "a couple" of the bottles were broken in the process of unloading, was directly and substantially corroborated by the evidence of the discovery of the broken whiskey bottle in the alley behind the vacant house, and by the finding of the matching chip of glass on the rear floorboard of defendant's automobile. The finding of the money in the two socks buried in defendant's back yard, which included the silver dollar with the Calico Ghost Town decal, inferentially linked defendant with the burglary of Ferdy's. ■ Possession of stolen property constitutes sufficient corroboration. (*People* v. *Rice,* 29 Cal.App.2d 614, 620 [85 P.2d 215].) Manual or personal

possession is not required. (*People* v. *Lanza*, 186 Cal.App.2d 860 [9 Cal.Rptr. 161].) ▆▆▆ While the evidence, that most of the stolen liquor was stashed in a vacant house across the street from defendant's residence, would not of itself constitute sufficient corroboration, nor would, the evidence that defendant had a considerable amount of change in his possession the day following the burglaries (as evidenced by the testimony of Miss Torres), such evidence, when added to the other corroborative evidence, clearly strengthens the inference of defendant's guilt.

Defendant argues that he was prejudiced because he was not instructed by the court that his closing argument to the jury could not be considered as evidence. However, immediately prior to the commencement of defendant's argument, the court told the jury in defendant's presence: "Now, whatever these gentlemen might have to say is not evidence, merely their view of what they think the evidence is. The only evidence in this case is the evidence that came to you from the witness stand under oath or which was admitted in evidence as exhibits." Defendant and his advisory counsel then consulted for a moment after the court's statement, and defendant then began his argument. After defendant's argument the court again admonished the jury in defendant's presence that the argument was not evidence. Defendant did not object, indicate surprise or move to reopen the case. ▆▆▆ It must be remembered that a defendant choosing to represent himself "... assumes for all purposes connected with his case, and must be prepared to be treated as having, the qualifications and responsibilities concomitant with the role he has undertaken; he is not entitled either to privileges and indulgences not accorded attorneys or to privileges and indulgences not accorded defendants who are represented by counsel. [Citation.]" (*People* v. *Mattson, supra,* 51 Cal.2d 777, 794.)

▆▆▆ Finally, defendant contends that the trial court erred in its refusal to grant him a new trial because of bias against him by a member of the jury which was concealed by a false answer on *voir dire* examination.

During the *voir dire* examination of the jury, Juror Alvin C. Tucker responded to questioning by the court, as follows:

"Q. [the court] Do you know the defendant here?

"A. [Mr. Tucker] In a 'round about way. I knew him through the kids when they was going to school.

"Q. *Is there anything in that acquaintanceship that would*

*cause you to be biased or prejudiced against him?* [Italics added.]

"A. No, sir."

In support of his motion for new trial defendant filed an affidavit executed by Mr. Tucker which states as follows:

"I, Alvin C. Tucker, hereby certify and declare:

"I reside at 754 - 20 Street, Paso Robles, California and am a mechanic at the Chevrolet Garage, Paso Robles, California. I have lived in Paso Robles and in this County for approximately the last 22 years.

"I was one of the jurors on the trial of the above-entitled case in the Superior Court. There was one other juror who resides in Paso Robles and has for many years last past, Louis J. Claassen of 344 - 14 Street, Paso Robles.

"Betty J. Paaske and Herbert A. Van Horn, both of whom reside in Atascadero, were also on the jury.

"I had personally known of Martin 'Junior' Sanchez through my children since they attended Paso Robles Union High School at the same time Sanchez was enrolled as a student and was an athlete there. I would say I have personally known of him for about the last 10 years. Like the other permanent residents of Paso Robles and the northern part of our county, I have known through the press, local radio and conversation of the general reputation of 'Junior' Sanchez, defendant in the case we tried, for truth, honesty and integrity —which was bad and for being frequently suspected of, and, at least once before the case we tried, convicted of, burglary. I knew that inquiries regarding him were frequently made by the police during the last few years and that the general opinion of the community was that it was only a question of time before he would be put away.

"In the jury room, during our deliberations, it was necessary for some of the 'local' jurors to, and we did, point out to the jurors from the south end of the county that the statements relative to his alibi, such as being asleep in a car at the time the burglaries occurred, and the like, made by Sanchez during his 'argument' were not sworn testimony and had to be disregarded under the judge's instructions to us. The 'argument'—or 'unsworn testimony'—of Sanchez was impressive and the fact that he was apparently in a car with the witness Lamproe when the police just arrested Lamproe only —without arresting Sanchez—backed up the probability under his unsworn statements that Lamproe was not only the first and proper suspect and guilty but that he had deliberately thrown the blame upon a man of bad reputation that he knew

the police wanted—but who was innocent in this particular case—in order to make things easier upon himself.

"We local jurors in discussing the whole situation informed the jurors from the south end of the county of Sanchez' bad reputation (of his previous conviction for burglary and the fact that ever since his high school days he had been often in trouble with the police and suspected of stealing).

"I believe it was only the information we local jurors had and gave to the non-local jurors about Sanchez which induced the south-county jurors to go along with us and convict the defendant because technically, he had given alibi testimony which he had not sworn to, and which, under the judge's instructions we were not supposed to consider as proof of any facts.

"I have read the foregoing statement consisting of three pages to this point, and it is true and correct, and I certify and declare under penalty of perjury that the foregoing statement is true and correct.

"Executed at Paso Robles, California, this 27th day of March, 1963."

The affidavit of Juror Tucker was the only affidavit filed in support of the motion for new trial.

As stated by our Supreme Court in *People* v. *Castaldia,* 51 Cal.2d 569, 572 [335 P.2d 104], "It is the general rule in California that affidavits of jurors may not be used to impeach a verdict. [Citation.] However, an exception to this general rule is: Affidavits of jurors may be used to set aside a verdict where the bias or disqualification of a juror was concealed by false answers on *voir dire* examination. [Citations.]" But as pointed out by the court in *People* v. *Black,* 216 Cal.App.2d 103, 115 [30 Cal.Rptr. 798] (quoting from *Markaway* v. *Keesling,* 211 Cal.App.2d 607, 612 [27 Cal.Rptr. 583]), " 'It is also the controlling law of this state that even where affidavits can properly be received to impeach the verdict of a jury they must be accompanied by an affirmative showing that neither the moving party nor his counsel had knowledge of the misconduct relied on prior to the rendition of the verdict. The absence of such a showing in support of the motion for new trial is fatal.' " (See also *Sherwin* v. *Southern Pac. Co.,* 168 Cal. 722, 726 [145 P. 92] ; *Crespo* v. *Cook,* 168 Cal.App.2d 360, 363 [336 P.2d 31] ; *Dunford* v. *General Water Heater Corp.,* 150 Cal.App.2d 260, 265 [309 P.2d 958] ; *Forman* v. *Alexander's Markets,* 138 Cal.App.2d 671, 674-676 [292 P.2d 257] ; and *Lafferty* v.

*Market Street Ry. Co.,* 7 Cal.App.2d 698, 702-703 [46 P.2d 996].)　In the instant case no such showing was made.

For the foregoing reasons, the judgment of conviction is affirmed.

Kingsley, J., and Frampton, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.