452 P.2d 529

**STATE of Arizona, Appellee,**

v.

**James Homer OLIVER, Jr., Appellant.**

**No. I CA–CR 184.**

Court of Appeals of Arizona.

March 27, 1969.

As Corrected on Denial of Rehearing

April 24, 1969.

Review Denied May 20, 1969.

for a period of not less than one nor more than three years. Both the judgment and sentence are attacked on this appeal.

The defendant assails his conviction on the grounds that the State's evidence in corroboration of an accomplice's testimony was insufficient to sustain the conviction and that the trial court erred in not granting his motion for a directed verdict at the close of the State's case.

Detailed recitation of the details of the accomplice's testimony is unnecessary. The substance of his testimony was that some time either late December 5, 1967 or early in the morning of December 6, 1967, he and the defendant entered the premises of the Arizona Self-Service Auto, located at 1014 North Central in Phoenix, Arizona, by removing a pane of glass from a skylight on the roof of the building. While the accomplice was engaged in taking money from a cash box in the office part of the premises, the defendant took some tools from another part of the premises and gathered them up in a sweat shirt or rag. They both exited together via a large sliding garage type door, which they had unlocked. The accomplice kept the money in his pocket and they drove off in his car in the trunk of which the tools were deposited.

The accomplice further testified that he could not recall exactly when or by whom the tools were removed from the trunk of his car but that he did subsequently go to the defendant's house and saw the tools there. According to his testimony, he went to the defendant's house in order to recover the tools for the owner. He succeeded in obtaining some of the tools from the defendant, which had certain characteristic markings, i. e., the initials B. T. or S. S. were scratched into them.

It was established at trial, by other testimony, that certain tools bearing B. T. and S. S. markings were stolen from the burglarized premises. These tools belonged to a co-owner of the automotive business, one Bernie Trouter, who was also a member of the Phoenix Police Department. A

———◆———

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Raymond Huffsteter, Phoenix, for appellant.

HATHAWAY, Judge.

The defendant was charged with first degree burglary, pleaded not guilty, was tried by a jury and found guilty. A judgment of conviction was duly entered thereon and the defendant sentenced to imprisonment in the Arizona State Prison

police officer, pursuant to a search warrant, which he had unsuccessfully attempted to serve on the defendant, opened the trunk of a 1965 Barracuda Plymouth parked some distance from the defendant's home with the keys which were left in the ignition, and found tools inside marked B. T. or S. S. Several witnesses testified that the defendant owned a Barracuda Plymouth.

Three witnesses testified to the fact that, during the latter part of December, they observed the defendant using tools marked B. T. or S. S. One of these witnesses, a co-worker at the service station where the defendant was employed early in December, testified to a conversation with the defendant in the latter part of December:

"Q  * * *  Would you relate that portion of the conversation that bore upon tools?

A  Yes.  Well, I asked Jim, I says, I asked him why he does all this stuff, and—see, he told me a few things, and I said, 'Why do you do all of these things?  Don't you care for yourself?'

And he told me, he says, he lived his 23 years, he says he crammed all of his 23 years, his whole life, into 23 years, so he doesn't care what happened.

I told him, 'Why don't you care?' And he just didn't care what happens.

So I mentioned about some tools that were stolen, and he was just— you know, he just didn't care what he said or what he did or what happened to him or anything.  He just says—I says, 'What about the tools?'

He said, 'Dunbar [the accomplice] has been pulling all of these jobs and everything,' this buddy of his, Dunbar, and he says that 'we just went and did it.'  He didn't care what happened or anything.

Q  'We just went and did it?'

A  Pardon?

Q  He said, 'We just went and did it?'

A  He said, 'We just did it.' "

The defendant contends that his conviction cannot stand because it was based on the uncorroborated testimony of an accomplice proscribed by the mandate of A.R.S. § 13-136:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense.  The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

In State v. Wilson, 7 Ariz.App. 384, 439 P.2d 831 (1968), we reiterated the principles governing the amount of corroboration necessary as set forth in State v. Springer, 102 Ariz. 238, 428 P.2d 95 (1967), cert. denied 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 986.

" '*  *  *  Our case law interpreting this statute provides, among other things, that evidence which in only a "slight" degree tends to implicate the defendant is sufficient to corroborate an accomplice's testimony, State v. Miller, 71 Ariz. 140, 224 P.2d 205; that the corroborating evidence need not be sufficient to establish the defendant's guilt, State v. Goldthorpe, 96 Ariz. 350, 395 P.2d 708; that the evidence need not directly connect the defendant with the offense but need only tend to do so, State v. Sheldon, 91 Ariz. 73, 369 P.2d 917; that the necessary corroboration may be established by circumstantial evidence, State v. Bagby, 83 Ariz. 83, 316 P.2d 941; and that, "[i]n the last analysis * * * the facts of each case must govern."  State v. Sheldon, supra, 91 Ariz. at p. 79, 369 P.2d at p. 922.' " 439 P.2d 833.

As we have indicated above, several witnesses testified to the fact that the defendant was in possession of the tools which were fruits of the burglary.  Proof

of the possession of such stolen property, the possession not having been satisfactorily explained, is considered sufficient corroboration of the testimony of an accomplice to warrant a conviction. State v. Smith, 96 Ariz. 322, 395 P.2d 362 (1964); Harrell v. State, 381 P.2d 164 (Okl.Cr. 1963); State v. Howell, 237 Or. 382, 388 P.2d 282 (1964); People v. Sanchez, 232 Cal.App.2d 812, 43 Cal.Rptr. 131 (1965); Self v. State, 108 Ga.App. 201, 132 S.E.2d 548 (1963); 2 Wharton's Criminal Evidence § 467.

▉▉ Additionally, the defendant made an incriminating statement to his co-worker which connected him with the burglary. Such extrajudicial admissions and statements of a defendant are proper corroborative evidence. People v. Ward, 72 Cal. Rptr. 46, 58 (Cal.App.1968); 2 Wharton's Criminal Evidence § 466. We believe that this evidence was legally sufficient to lend credibility to the statements of the accomplice.[1] The gravamen of the defendant's complaint with regard to his sentence is the trial court's refusal to grant him probation. He argues that the trial court's attitude, as reflected by the following comments of the court made at the time of sentencing, constituted an infliction of imprisonment because he exercised his right to have his guilt determined by a jury:

"I follow a kind of rule of thumb: when I feel that a person has committed perjury I rarely put them on probation. I feel that this man had done this in this case. You can't very well work with someone who hasn't admitted their guilt and has lied about it."

▉ The power to suspend the imposition of sentence is entrusted solely to the discretion of the trial court. State v. Bigelow, 76 Ariz. 13, 258 P.2d 409, 39 A.L.R.2d 979 (1953); State v. Douglas, 87 Ariz. 182, 349 P.2d 622 (1960), cert. denied 363 U.S. 815, 80 S.Ct. 1255, 4 L. Ed.2d 1157; A.R.S. § 13–1657. Our Supreme Court discussed this "discretion" to grant probation in Varela v. Merrill, 51 Ariz. 64, 74 P.2d 569 (1937):

"* * * There are no rules prescribed as to when this discretion shall be exercised, or as to what evidence is necessary to satisfy the trial judge that the case is a proper one for its exercise. Indeed, it would be almost impossible to present a case which would justify this court in finding that the trial court had abused its discretion in regard to whether sentence should be suspended or not." 74 P.2d 574.

▉ We decline to attribute to the trial court's words the meaning suggested by the defendant. It appears to us the trial judge was not penalizing the defendant for refusing to plead guilty, as the defendant contends. Rather, he relied on his observations as to the demeanor of the defendant in telling his story at trial and concluded that he had lied. Since the purpose of A.R.S. § 13–1657 is to make the punishment fit the offender, State v. Douglas, supra, the trial judge was evidently of the opinion that the defendant was not amenable to a rehabilitative program. We cannot denounce this as arbitrary or capricious, hence our interference would be inappropriate.

Judgment and sentence affirmed.

MOLLOY and KRUCKER, JJ., concur.
NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

---

[1] "The witness swearing directly to the prisoner's guilt, that guilt is established if the witness be credible. What, therefore, is required is to throw something, no matter of what nature, into the opposite scale, which will serve as a counterpoise to the impeachment of the witness' credit arising from the character in which he appears; something that will improve *quality* of the proof; which has been given by the accomplice; and *that* something may be anything which induces a rational belief in the mind of the jury that the narrative of the accomplice is in all respects a correct one."
Chief Baron Joy, Evidence of Accomplices 8 (1844) quoted in 7 Wigmore, Evidence § 2059, p. 328 (1940).